872 F.2d 1026
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Rasheen Rockmon JABBAR-EL, Plaintiff-Appellant,
v.
Perry M. JOHNSON, Frank Elo, Dale Foltz, P. Goyings, D.
Fleathers, John R. Voig, W. Norment, Defendants-Appellees.
 No. 88-1167.
 United States Court of Appeals, Sixth Circuit.
 March 21, 1989.
 
 Before BOYCE F. MARTIN, Jr., NATHANIEL R. JONES and ALAN E. NORRIS, Circuit Judges.
 PER CURIAM.
 
 
 1
 Plaintiff, Rasheen Rockmon Jabbar-El, appeals from summary judgment granted to defendants, Perry Johnson, the Director of the Michigan Department of Corrections, and several other Department of Corrections' officials, in this prisoner civil rights action brought pursuant to 42 U.S.C. Sec. 1983. Plaintiff claimed that the state had denied his right to due process of law guaranteed under the fourteenth amendment to the United States Constitution, and also that he was subjected to cruel and unusual punishment in violation of his eighth amendment rights. For the reasons discussed below, we reverse the judgment of the district court.
 
 I.
 
 2
 Plaintiff is a prisoner at Southern Michigan State Prison. According to his verified pro se complaint, a prison officer claimed that he was in possession of dangerous contraband in violation of prison rules. After an investigation and hearing where it was determined that he was guilty of possessing the contraband, he was placed into a segregation cell as punishment.
 
 
 3
 In his complaint, plaintiff alleged that, during his period of segregation, he was subjected to conditions which made his cell unfit for habitation--infestation with vermin, feces on the wall, and the absence of lighting, soap, toothbrush, and cleaning supplies. He also alleged that he was forcibly injected with Thorazine and kept in handcuffs, and his safety was threatened because of a nervous breakdown occasioned by the cruel treatment.
 
 
 4
 His complaint alleged that he was denied due process of law at his hearing, and that the condition of his cell, as well as his treatment in it, amounted to cruel and unusual punishment. Deprivation of those constitutional rights constituted the basis for his civil rights claim.
 
 
 5
 On September 30, 1985, partial summary judgment was granted in favor of defendants on plaintiff's due process claim. In reliance upon Parratt v. Taylor, 451 U.S. 527 (1981), the district court determined that plaintiff had access to sufficient state remedies to challenge the deprivation of his due process rights, and that is all that due process required.
 
 
 6
 In May 1987, defendants filed a motion for summary judgment with regard to plaintiff's cruel and unusual punishment claim, to which the affidavits of five prison officials were attached. Those affidavits denied that such conditions existed in the cell and stated that plaintiff was himself responsible for keeping it clean. Defendants also filed the affidavit of the prison medical director, stating that plaintiff suffered from a personality disorder, not a nervous breakdown, and that the disorder predated his period of segregation.
 
 
 7
 Plaintiff responded with the affidavit of a fellow-inmate that confirmed plaintiff's allegations regarding deplorable conditions and the adverse impact that they had upon him. Nevertheless, the district court accepted a magistrate's report recommending summary judgment in favor of defendants on the cruel and unusual punishment claim. We must now determine whether summary judgment was appropriate on either of plaintiff's claims.
 
 II.
 
 8
 We first address whether the district court properly granted summary judgment on plaintiff's cruel and unusual punishment claim. Upon review of a grant of summary judgment, the same standard as originally applied by the district court is employed. Hines v. Joy Mfg. Co., 850 F.2d 1146, 1149 (6th Cir.1988). The moving party must point to an "absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). The burden then falls upon the nonmovant to produce some evidence to show that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).
 
 
 9
 The magistrate's report, accepted by the district court, recommended summary judgment because defendants' contention that plaintiff was responsible for cleaning his own cell was unrebutted. In addition, the magistrate determined that the prison medical director's observation that plaintiff suffered only with a personality disorder predating his segregation was uncontested. Once defendants presented those affidavits, it became incumbent upon plaintiff to respond by affidavit, or as otherwise provided by Fed.R.Civ.P. 56(e), to show that a genuine issue of material fact remained for trial. We believe that he met that burden.
 
 
 10
 First, to the extent that plaintiff's complaint was verified and based upon personal knowledge, it satisfied the Rule 56(e) requirement as an opposing affidavit. Hooks v. Hooks, 771 F.2d 935, 946 (6th Cir.1985). It alleged that his cell was not suitable for habitation, and that he was not provided materials with which to clean it. He also stated that "[d]ue to the anguish and the pressure I have not only lost appetite and weight, but I have suffered a complete mental and nervous breakdown which has forced me into therapy." Likewise, his fellow-inmate's supporting affidavit stated that plaintiff was not given any material with which "to clean himself or sanitize his cell." It also indicated that plaintiff began to look worse as time went on. Taken together with the verified complaint, defendants' contentions were sufficiently rebutted so as to establish that issues of fact remained with regard to whether plaintiff was given cleaning materials for his cell, the condition of the cell, and also whether his mental condition deteriorated as a result of his confinement. Consequently, there remained a genuine issue for trial with regard to plaintiff's eighth amendment cruel and unusual punishment claim and summary judgment in favor of defendants was not proper. Liberty Lobby, 477 U.S. at 248.
 
 III.
 
 11
 We also conclude that the district court, having relied upon Parratt v. Taylor, applied the incorrect standard in evaluating plaintiff's due process claim. In Parratt, the Supreme Court announced that when a random and unauthorized act is done under color of state law, and that act deprives an individual of a constitutionally protected right, due process is not denied so long as there is access to an adequate state remedy to redress the damage done by the state. 451 U.S. at 542-43. The rationale is that "a state cannot predict when its employees will act in a random and unauthorized manner, [and therefore] it is impracticable in such cases to require the state to provide meaningful predeprivation procedures." Lee v. Western Reserve Psychiatric Habilitation Center, 747 F.2d 1062, 1068 (6th Cir.1984).
 
 
 12
 However, plaintiff's alleged deprivation of a constitutionally protected liberty interest was the result of an established state procedure. That is, he was given a hearing before he was placed into the segregation cell. When the deprivation of an interest results from an established state procedure, a different due process analysis is required. See, e.g., Western Reserve, 747 F.2d at 1068; Vinson v. Campbell County Fiscal Court, 820 F.2d 194, 198-99 (6th Cir.1987).
 
 
 13
 In this context, plaintiff's claim should have been analyzed under the guidelines set forth in Superintendent, Mass. Correctional Inst. v. Hill, 472 U.S. 445 (1985). Plaintiff was entitled to a hearing prior to his segregation that comported with the minimum requirements of procedural due process. Id. at 453. Before he was placed into the segregation cell for violating prison rules, he was entitled to:
 
 
 14
 (1) advance written notice of the disciplinary charges;
 
 
 15
 (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and
 
 
 16
 (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action.
 
 
 17
 Id. at 454 (citing Wolff v. McDonnell, 418 U.S. 539, 563-67 (1974)); see also Woodson v. Lack, 865 F.2d 107, 109-10 (6th Cir.1989) (Wolff sets forth the minimum due process required when a prisoner is segregated for punitive reasons); Franklin v. Aycock, 795 F.2d 1253, 1262-63 (6th Cir.1986) (noting that Wolff "set forth the minimum procedures which must be followed in prison disciplinary hearings resulting in disciplinary confinement"); and Bills v. Henderson, 631 F.2d 1287, 1296 (6th Cir.1980) ("a transfer to administrative segregation entitles inmates to the procedures set forth in Wolff ").
 
 
 18
 Due process also requires that there be some evidence that supports the decision made at the prison disciplinary hearing. Hill, 472 U.S. at 454. In this case, there must have been some evidence from which the hearing officer could conclude that plaintiff was in possession of dangerous contraband. Upon review, "the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." Id. at 455-56. We therefore remand plaintiff's due process claim to be reviewed in light of the applicable due process requirements.
 
 IV.
 
 19
 For the foregoing reasons, the order of the district court granting summary judgment on plaintiff's due process claim is reversed and remanded for consideration in accordance with the instructions set out above. The order granting summary judgment on plaintiff's eighth amendment claim is reversed and the cause remanded for further proceedings according to law and consistent with this opinion.