Kenneth HELMS, Plaintiff,

v.

William A. RAFTER, Defendant.

Civ. No. 1:93cv75.

United States District Court,
W.D. North Carolina,
Asheville Division.

April 14, 1994.

James Michael Lloyd and Robert E. Dungan, Asheville, NC, for plaintiff.

Victoria Voight, Asst. Atty. Gen., North Carolina Dept. of Justice, Raleigh, NC, for defendant.

### *MEMORANDUM OF OPINION*

RICHARD L. VOORHEES, Chief Judge.

Pursuant to 28 U.S.C. § 636(b) and by Order of this Court dated December 7, 1989, Chief United States Magistrate Judge J. Toliver Davis was designated to consider pending motions in the captioned civil case and to submit to this Court recommendations for the disposition of these motions.

On September 7, 1993, the Magistrate Judge filed a Memorandum and Recommendation in this case containing proposed findings of fact and conclusions of law in support of a recommendation regarding Defendant's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment, filed July 9, 1993. After being granted an extension of time by the Court, Defendant filed timely written objections in response thereto on September 20, 1993. Plaintiff filed a Motion to Amend Complaint on September 17, 1993, and subsequently filed a Request for Hearing on October 6, 1993. After due consideration of all the pleadings and memoranda filed herein, the Court will deny Plaintiff's Request for Hearing, grant Plaintiff's Motion to Amend Complaint, and grant Defendant's Motion for Summary Judgment.

### I. BACKGROUND

Plaintiff serves as a Health Care Technician at the Black Mountain Alcohol and Drug Abuse Treatment Center, a facility operated by the North Carolina Department of Human Resources. Defendant is employed as the Center's director and has been sued in his individual and official capacities. In late 1990, Plaintiff allegedly engaged in consensual intercourse with an adult female patient. Such conduct is prohibited by Center policy and amounts to a dischargeable offense. In addition, Plaintiff corresponded with a second female who was a former patient, which correspondence was of an intimate nature and suggested that Plaintiff had engaged in sexual relations with this second female while she was a patient at the Center.

After an initial investigation of the incident was conducted by human resources officials, Defendant summoned Plaintiff to the office of the program director on March 12, 1991, and "at that meeting Plaintiff was advised of the allegations of sexual misconduct ... Plaintiff stated that he understood the charges but disputed them." **Memorandum in Support at 6.** There is also evidence that Plaintiff had received notice of these allegations as early as November 1990. **Defendant's Objections to Memorandum and Recommendations at 6.** Defendant thereafter placed Plaintiff on investigatory suspension effective March 12, 1991. A pre-dismissal conference was held on April 17, 1991, and at "no time during the conference did Plaintiff voice any concern as to the ... lack of time to adequately prepare and respond to the charges." **Memorandum in Support at 8.** At the conclusion of the pre-dismissal conference, Defendant decided to dismiss Plaintiff, and that same day Plaintiff was

provided with a dismissal letter advising him of the reasons for his dismissal, his appeal rights, and the department's grievance policy. *Id.* at 9.

Finding no relief in the departmental grievance procedures, Plaintiff appealed the final decision of the Secretary of the North Carolina Department of Human Resources to the North Carolina Office of Administrative Hearings for a full evidentiary hearing and a final agency decision by the State Personnel Commission. It is uncontested that Plaintiff, for the first time, raised at a February 24, 1992, hearing the issues of "whether he was provided adequate notice of the date on which the alleged incident occurred and whether he was provided adequate notice or opportunity to prepare for or respond to these allegations prior to the pre-suspension and pre-dismissal conferences." *Id.* at 12.

In the transcript of administrative proceedings provided by Defendant, the administrative law judge concluded, in pertinent part, that:

5. The respondent [North Carolina Department of Human Resources] failed to give the petitioner adequate notice prior to his suspension on March 10, 1991 [sic], of the nature of the proceeding so as to enable the petitioner to prepare a meaningful defense to the allegations against him.

6. The respondent failed to give the petitioner sufficient advance notice of his pre-dismissal conference on April 17, 1991, to enable the petitioner to prepare an adequate defense to the charges against him.

7. The failure of the respondent to give the petitioner adequate notice of the proceedings at which the petitioner's interest in his employment were [sic] adversely affected deprived the petitioner of due process of law in his suspension and dismissal from employment with the respondent agency.

**Recommended Decision at 8 (filed July 15, 1992).** By "Decision and Order" dated February 18, 1993, the administrative law judge's recommendations were adopted verbatim by the State Personnel Commission. *See* **Decision and Order dated February 18, 1993.** Plaintiff was subsequently reinstated and awarded back pay.

On May 24, 1993, Plaintiff filed this action under 42 U.S.C. § 1983, claiming that the named Defendant had deprived him of a property interest in violation of his due process rights. Plaintiff also asserted supplemental claims for negligent infliction of emotional distress, infliction of emotional distress with reckless indifference to the likelihood of harm, alienation of affection, and wrongful discharge. Plaintiff previously entered a voluntary dismissal with prejudice as to former defendant Black Mountain Alcohol and Drug Abuse Treatment Center. Defendant filed his Motion to Dismiss, or in the Alternative, Motion for Summary Judgment on July 9, 1993, and Plaintiff filed a Memorandum in Opposition thereto on August 10, 1993, to which Defendant filed a Reply on August 18, 1993. Upon the filing of the Magistrate Judge's Memorandum and Recommendation on September 7, 1993, Defendant filed objections thereto on September 20, 1993. While Plaintiff failed to file any objections to the Memorandum and Recommendation, he did file a Motion to Amend Complaint on September 17, 1993, which apparently abandons all of Plaintiff's original claims except the action under 42 U.S.C. § 1983. Plaintiff also filed a Request for Hearing on October 6, 1993, as to his Motion to Amend Complaint.

## II. ANALYSIS

### A. Motion to Amend Complaint/Request for Hearing

■ A review of Plaintiff's proposed Amended Complaint reveals that it is in conformity with the requirements of Rule 15(a), Federal Rules of Civil Procedure, inasmuch as such Amended Complaint appears to be made in good faith and would not prejudice the Defendant. As the Fourth Circuit has observed:

Rule 15(a) of the Federal Rules of Civil Procedure provides that when a party seeks leave to amend a complaint "leave shall be freely given when justice so requires." *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962), mandates a liberal reading of the rule's direction for "free" allowance: motions to amend are to be granted in the

absence of a "declared reason" "such as undue delay, bad faith or dilatory motive ..., repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party ..., futility of amendment, etc." In *Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (4th Cir. 1980), we noted that under *Foman* a lack of prejudice would alone ordinarily warrant granting leave to amend and that mere delay absent any resulting prejudice or evidence of dilatoriness was not sufficient justification for denial.

*Ward Electronics Service, Inc. v. First Commercial Bank,* 819 F.2d 496, 497 (4th Cir. 1987). In accordance with the teachings of the Fourth Circuit, therefore, Plaintiff's Motion to Amend Complaint will be allowed, and a hearing to that effect will be unnecessary.

## B. Memorandum and Recommendation

As a preliminary matter, the Court notes that while Plaintiff failed to file objections to the Magistrate Judge's Memorandum and Recommendation, he apparently filed his Motion to Amend Complaint in response thereto in lieu of formal objections. Significantly, Plaintiff's Amended Complaint abandons those claims on which the Magistrate Judge recommended a finding in favor of the Defendant, namely, all causes of action except that under 42 U.S.C. § 1983. There being no formal objections filed by either party as to those portions of the Magistrate Judge's Memorandum and Recommendation which recommend a finding in favor of the Defendant, and Plaintiff having apparently abandoned such claims in his Amended Complaint, the Court, after a careful review thereof, finds that the proposed findings of fact are supported by the record and that the proposed conclusions of law are consistent with current case law. Accordingly, the Court hereby accepts the Magistrate Judge's Recommendation as to the following:

1. That Defendant's Motion to Dismiss Plaintiff's wrongful discharge claim be granted, that such claim be dismissed;

2. That Defendant's Motion for Summary Judgment on Plaintiff's claim against Defendant in his official capacity be granted;

3. That Defendant's Motion for Summary Judgment on Plaintiff's claim of negligent infliction of emotional distress be granted;

4. That Defendant's Motion for Summary Judgment on Plaintiff's claim of alienation of affection be granted; and

5. That Defendant's Motion for Summary Judgment on Plaintiff's claim of intentional infliction of emotional distress be granted.

As to Plaintiff's remaining cause of action under 42 U.S.C. § 1983 as alleged in the Amended Complaint, the Magistrate Judge recommended in his Memorandum and Recommendation that Defendant's Motion for Summary Judgment be denied on the issues of qualified immunity and *res judicata.* Because the Defendant filed objections in response thereto on September 20, 1993, the Court will proceed with a *de novo* review of each issue in turn.

### 1. *Standard for Summary Judgment*

On a motion for summary judgment, the moving party has the burden of production to show that there are no genuine issues for trial. Upon the moving party's meeting that burden, the nonmoving party has the burden of persuasion to establish that there is a genuine issue for trial:

> When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. In the language of the Rule, the nonmoving party must come forward with "specific facts showing that there is a *genuine issue for trial.*" Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial."

*Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (citations omitted; emphasis in original) (quoting Fed. R.Civ.P. 56). There must be more than just a factual dispute; the fact in question must be material and readily identifiable by the substantive law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–49, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). For purposes of Defendant's Motion for Summary Judgment here, the underlying facts and con-

tentions have been viewed in a light most favorable to Plaintiff.

### 2. *Qualified Immunity*

■ Public officials are free from liability for monetary damages if they can plead and prove that their conduct did not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 815–16, 102 S.Ct. 2727, 2736–37, 73 L.Ed.2d 396 (1982). In *Mitchell v. Forsyth,* 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985), the Supreme Court held that qualified immunity is *"immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if the case is erroneously permitted to go to trial." *Id.* at 526, 105 S.Ct. at 2817 (emphasis in original). Qualified immunity is therefore a question of law. *Adams v. St. Lucie County Sheriff's Dept.,* 962 F.2d 1563, 1566–67 (11th Cir.1992), *vacated on other grounds,* 982 F.2d 472 (11th Cir.1993).

■ When a defendant moves for summary judgment on the ground of qualified immunity, the court "considers in the light most favorable to the plaintiff all facts fairly inferrable from the record–regardless of the existence of factual disputes—and decides whether, under those facts, [defendant's] conduct violated law clearly established at the time." *Bennett v. Parker,* 898 F.2d 1530, 1535 n. 2 (11th Cir.1990), *cert. denied,* 498 U.S. 1103, 111 S.Ct. 1003, 112 L.Ed.2d 1085 (1991). Plaintiff must produce evidence sufficient to create a genuine issue as to whether the defendant committed the acts alleged. All inferences, including credibility of an affiant, are drawn in favor of a plaintiff for qualified immunity purposes. *Gordon v. Kidd,* 971 F.2d 1087, 1093–94 (4th Cir.1992).

■ If it is undisputed that the right allegedly violated was clearly established at the time, the defendant asserting a qualified immunity defense may still be immune from damages for violation of that right if, under the circumstances, a reasonable state official could have believed that his particular conduct was lawful. A court must make an objective, although fact-specific, inquiry into the legal reasonableness of the conduct.

*Anderson v. Creighton,* 483 U.S. 635, 641, 107 S.Ct. 3034, 3039–40, 97 L.Ed.2d 523 (1987). The lawfulness of the action must be apparent when assessed from the perspective of an objectively reasonable state official charged with knowledge of established law; a defendant's motives are irrelevant to the qualified immunity inquiry. *Id.* In *Pritchett v. Alford,* 973 F.2d 307 (4th Cir.1992), the Fourth Circuit provides an analytical framework for consideration of claims of qualified immunity in the context of summary judgment:

> [S]ummary judgment for the movant is appropriate only if (1) there are no genuine issues of material fact, and (2) on the undisputed facts the defendant as movant is entitled to judgment as a matter of law. As indicated, the narrow threshold question whether a right allegedly violated was clearly established at the appropriate level of inquiry and at the time of the challenged conduct is always a matter of law for the court, hence is always capable of decision at the summary judgment stage. Whether the conduct allegedly violative of the right actually occurred or, if so, whether a reasonable officer would have known that that conduct would violate the right, however, may or may not be then subject to determination as a matter of law. If there are genuine issues of historical fact respecting the officer's conduct or its reasonableness under the circumstances, summary judgment is not appropriate, and the issue must be reserved for trial.

*Id.* at 313 (citations omitted).

■ The appropriate inquiry on a claim of qualified immunity where, as here, the Plaintiff asserts that the Defendant deprived him of due process is as follows:

> [Whether] any competent official in his position should know that the Fourteenth Amendment requires that before state-created property rights may be cut off by officials such as he, their owner must, to the extent possible, be given, at a minimum, notice and an opportunity to be heard why they should not be. . . .

*Id.* at 317. The Defendant concedes that Plaintiff had a legitimate property interest in his continued state employment which could

not be taken without due process. **Defendant's Objections to Memorandum and Recommendation at 9.** Further, the Court finds that there is no dispute that the Plaintiff was given an opportunity to be heard, both at the pre-suspension hearing on March 12, 1991, and at the pre-dismissal hearing on April 17, 1991. The only remaining discernable issue, therefore, in the context of Defendant's qualified immunity defense is whether Plaintiff was given adequate notice, thereby rendering his opportunity to be heard meaningful.

■ As stated by the Supreme Court in *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985), "all the process that is due is provided by a pretermination opportunity to respond, coupled with post-termination administrative procedures as provided by the [state] law." *Id.* at 547–48, 105 S.Ct. at 1496. Although some form of pretermination hearing is required prior to dismissal, the hearing "need not be elaborate." *Id.* at 545, 105 S.Ct. at 1495. When post-termination administrative procedures are afforded, such pretermination procedure functions only as "an initial check against mistaken decisions—essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." *Id.* at 545–46, 105 S.Ct. at 1495. The pretermination process need not resolve the propriety of the discharge. *Id.* Due process is satisfied if the employee receives "*oral* or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story. To require more than this prior to termination would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee." *Id.* at 546, 105 S.Ct. at 1495 (emphasis added) (citations omitted).

■ Furthermore, the Fourth Circuit has held that "*Loudermill* does not impose on the government employer the burden to perform all pretermination acts that could benefit the employee subject to discharge." *Riccio v. County of Fairfax,* 907 F.2d 1459, 1464 (4th Cir.1990). Similarly, due process does not mandate that all evidence surrounding a

charge, or even the documentary evidence in support thereof, be provided to the employee, only that such descriptive explanation be afforded as to permit the employee to identify the conduct giving rise to the dismissal thereby enabling him to make a response. *Linton v. Frederick County Bd. of County Com'rs,* 964 F.2d 1436, 1440 (4th Cir.1992); *see also Gniotek v. City of Philadelphia,* 808 F.2d 241, 244 (3d Cir.1986) ("Notice is sufficient, 1) if it apprises the vulnerable party of the nature of the charges and general evidence against him, and 2) if it is timely under the particular circumstances of the case."), *cert. denied,* 481 U.S. 1050, 107 S.Ct. 2183, 95 L.Ed.2d 839 (1987).

The Fourth Circuit addressed similar circumstances in *Riccio, supra,* in which it upheld summary judgment in favor of an employer who summarily suspended an employee after an initial interview regarding allegations that he had made obscene phone calls and then dismissed said employee following another interview which focused on additional allegations of misconduct. Despite the employee's various claims regarding inadequate dismissal proceedings, including the failure to provide him with a copy of the investigative report, the court found in favor of the employer, stating that "although there were instances where the Department could have treated Riccio more fairly, none of the alleged procedural defects to which Riccio points indicates a violation of the *Loudermill* standard." *Id.* at 1464. More recently, the Fourth Circuit upheld summary judgment in favor of an employer who had, without prior notice thereof, delivered to an employee a notice of dismissal and then summarily dismissed said employee the very next day. *See Linton, supra.* The court held that, notwithstanding such short notice, the employee had not been deprived of his due process rights. *Id.* at 1440 (**"the quantity of time alone does not provide the measure of adequacy"**). The court further observed that:

"[t]here is no evidence in the record to suggest that [the employee] expressed a lack of understanding about any of the charges or that he protested that it was not he who was involved in the charged conduct. In light of [the employee's] re-

sponse and the historical context, there can be little doubt that the explanation given [the employee] satisfied the objective of pretermination process to provide 'an initial check against mistaken decisions.'"

*Id.* (quoting *Loudermill,* 470 U.S. at 545, 105 S.Ct. at 1495).

 Here, even evaluating the facts in a light most favorable to the Plaintiff, there is evidence that Plaintiff had notice of at least the nature of the charges against him as early as November 1990, almost four months prior to his pre-suspension meeting on March 12, 1991. *See* Transcript of Administrative Hearing, Vol. II, at 54. Further, it is undisputed that Plaintiff was advised at that March 12, 1991, meeting of at least the general allegations of sexual misconduct made by a specific patient, and that Plaintiff stated at that meeting that he understood the charges but disputed them. *See* Memorandum in Support at 6 (citing Transcript of Administrative Hearing, Vol. I, at 173–74). Finally, more than a month after the March 12, 1991, meeting, Plaintiff was again given notice of the charges against him at his pretermination meeting held on April 17, 1991, after which he was summarily dismissed. *See* Transcript of Administrative Hearing, Vol. II, at 77–78. That same day Defendant provided Plaintiff with a letter detailing the reasons for his dismissal and notifying him of his appeal rights.

Nevertheless, Plaintiff contends that whatever notice he in fact received was defective for two reasons. First, he asserts that the Defendant failed to advise him of the specific dates on which the sexual encounters allegedly took place. Second, he contends that Defendant failed to notify him in advance of the nature of both the pre-suspension meeting and the pretermination meeting. In essence, then, Plaintiff argues that Defendant failed to give him sufficient advance notice of the termination proceedings to enable him to prepare a defense on his own behalf. *See* Memorandum in Opposition at 3. As reflected in the Recommended Decision cited *supra,* adopted verbatim by the State Personnel Commission, this is the same rationale employed by the Administrative Law Judge in reinstating Plaintiff with back pay. In-

deed, although not entirely apparent at first glance, this appears to be the very same reasoning articulated by the Magistrate Judge in denying Defendant's motion for summary judgment on the issue of qualified immunity. *See* Memorandum and Recommendation at 8–11 (**"the court concludes that plaintiff has alleged that defendant, prior to causing plaintiff's employment to be terminated, failed to provide plaintiff with notice of a predeprivation hearing and, consequently, a meaningful predeprivation hearing"**).

 However, the Court finds that, notwithstanding the findings of the Administrative Law Judge, Defendant here did not deprive Plaintiff of the pretermination due process to which Plaintiff was entitled as a matter of law. As the Fourth Circuit makes clear, where there are adequate post-deprivation remedies available, Plaintiff is only entitled to a descriptive explanation of the charges against him so as to permit him to identify the conduct giving rise to the dismissal, thereby enabling him to make a response. *Linton,* 964 F.2d at 1440. Plaintiff was aware of at least the nature of the charges as early as November 1990 and was notified of the specific allegations as early as March 12, 1991, more than one month before his dismissal hearing. Although providing Plaintiff with the specific dates, if available, on which the alleged sexual encounters took place would obviously have afforded Plaintiff a better opportunity to defend himself at the pre-dismissal meeting, Defendant was not required "to perform all pretermination acts that could benefit the employee subject to discharge." *Riccio,* 907 F.2d at 1464. As the Supreme Court has clearly stated, the pretermination process need not resolve the propriety of the discharge, and due process is satisfied if the employee receives "oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Loudermill,* 470 U.S. at 546, 105 S.Ct. at 1495. The Court finds that these requirements were clearly met here. Moreover, the fact that Plaintiff was not informed in advance of the nature of the proceedings of March 12 and April 17, 1991, does not in

itself constitute a violation of Plaintiff's rights to due process. As *Loudermill* makes clear, Plaintiff was entitled to notice of the charges against him prior to dismissal, not to notice of the nature of the pre-dismissal proceedings themselves. So long as Plaintiff was provided with adequate notice, oral or written, of the charges against him prior to dismissal, such notice was constitutionally valid even if it was provided at the pre-dismissal hearing itself. *Linton*, 964 F.2d at 1440 (citing *Gniotek*, 808 F.2d at 244 (**lack of advance notice is not a *per se* violation of due process**)). The Court finds that Plaintiff received adequate notice of the charges of against him prior to dismissal and was therefore not deprived of the due process to which he was entitled.[1]

For the foregoing reasons, and because the Court finds that Defendant's conduct did not violate law clearly established at the time, the Court will grant Defendant's Motion for Summary Judgment on the issue of qualified immunity.

### 3. *Res Judicata*

■ Defendant asserts in the alternative that the state administrative decision underlying this action precludes Plaintiff's cause of action under 42 U.S.C. § 1983 by virtue of the doctrine of *res judicata*. Assuming that the decision here by the State Personnel Commission to reinstate the Plaintiff with back pay is entitled to preclusive effect generally,[2] the question before the Court is whether such decision specifically precludes Plaintiff's pending § 1983 claim.

The Fourth Circuit recently addressed an almost identical situation in *Davenport v. North Carolina Dept. of Transp.*, 3 F.3d 89 (4th Cir.1993), in which it specifically held that a judgment upholding an administrative

award did not preclude a claim under 42 U.S.C. § 1983. The court observed that:

> [T]he two proceedings at issue here allege different wrongs, leading to different injuries, entitling [sic] to different remedies. In the administrative proceeding the claimed wrong was a discharge without just cause from public employment in violation of statutorily protected rights, entitling [sic] to the remedy of reinstatement with back, and possibly front, pay. In the § 1983 action there are two claimed wrongs: a deprivation by political patronage of associational rights secured against state action by the First Amendment through the Fourteenth, and a deprivation of state-created property rights without procedural due process in violation of the Fourteenth Amendment, both entitling Davenport, if established, to the remedy of compensatory and punitive damages against persons acting under color of state law.

*Id.* at 96. The court distinguished the administrative decision-making process, which it characterized as "originating with base-line fact-finding by a government agency whose decision is subject then to only limited judicial review," from a § 1983 action which " 'involves a full trial with the right to have factual issues resolved by a jury.' " *Id.* (citation omitted). The court further noted that "[t]hough the constitutional claims asserted in the § 1983 action could be raised by the plaintiff in the administrative proceeding . . . [t]hey could not be invoked in that proceeding to provide the full range of constitutional remedies available in a § 1983 action." *Id.*

The Court finds that the cases cited by Defendant in his Objections are inapposite, and, therefore, in accordance with the Fourth Circuit's reasoning in *Davenport, supra,* the

---

1. The Court also notes the undisputed fact that at no time during the pre-dismissal hearing on April 17, 1991, did Plaintiff voice any concern as to the lack of specificity of the charges against him (particularly as to when the alleged incidents took place) or as to the lack of time in which to adequately prepare for and respond to the charges. *See* Memorandum in Support at 8 (**citing Transcript of Administrative Hearing, Vol. I, at 178–81**). While Plaintiff is certainly not estopped from raising these concerns at subsequent proceedings, his failure to do so is at least

indicative of his perception at the time that he had in fact been provided with an adequate and meaningful opportunity to respond.

2. The Court acknowledges the thorough discussion in the Magistrate Judge's Memorandum and Recommendation regarding the preclusive effect of state agency decisions generally, and for the purposes of this Order the Court will assume without so holding that state decisions are entitled to such deference.

Court finds that Plaintiff's § 1983 claim is not precluded by the state agency decision previously entered herein. The Court would therefore deny Defendant's motion for summary judgment on the alternative issue of *res judicata.*

### III. CONCLUSION

For the reasons stated above,

**IT IS, THEREFORE, ORDERED** that Plaintiff's motion to amend complaint is hereby **ALLOWED,** and Plaintiff's request for a hearing thereon is hereby **DENIED** as moot;

**IT IS FURTHER ORDERED** that Defendant's motion to dismiss Plaintiff's wrongful discharge claim is hereby **GRANTED;**

**IT IS FURTHER ORDERED** that Defendant's motion for summary judgment on Plaintiff's claim against Defendant in his official capacity is hereby **GRANTED;**

**IT IS FURTHER ORDERED** that Defendant's motion for summary judgment on Plaintiff's claim of negligent infliction of emotional distress is hereby **GRANTED;**

**IT IS FURTHER ORDERED** that Defendant's motion for summary judgment on Plaintiff's claim of alienation of affection is hereby **GRANTED;**

**IT IS FURTHER ORDERED** that Defendant's motion for summary Judgment on Plaintiff's claim of intentional infliction of emotional distress is hereby **GRANTED;** and

**IT IS FURTHER ORDERED** that Defendant's motion for summary judgment on Plaintiff's claim pursuant to 42 U.S.C. § 1983 is hereby **GRANTED.**