Lisa McDANIEL, Plaintiff,

v.

**PRINCETON CITY SCHOOL DISTRICT BOARD OF EDUCATION, et al., Defendants.**

No. C-1-98-772.

United States District Court, S.D. Ohio, Western Division.

Nov. 13, 1999.

David Gary Latanick, Brenda Redmond, Cloppert Portman Sauter Latanick & Foley, Columbus, OH, for Lisa McDaniel, plaintiff.

Paul Robert Berninger, Amy E Gasser, Wood & Lamping, Cincinnati, OH, for Princeton Board of Education, Dr. Dennis L. Peterson, Superintendent, David D Baker, Superintendent Princeton City School District, defendants.

## ORDER

SPIEGEL, Senior District Judge.

This matter is before the Court on Plaintiff Lisa McDaniel's Motion for Summary Judgment (doc. 10); Defendants Princeton City School District Board of Education and David D. Baker's Response to Plaintiff's Motion (doc. 12); Plaintiff's Reply (doc. 15); Defendants' Motion for Summary Judgment (doc. 11); Plaintiff's Response to Defendants' Motion (doc. 13); and Defendants' Reply (doc. 14).

## BACKGROUND

Plaintiff Lisa McDaniel filed this action pursuant to Title 42 U.S.C. § 1983 on October 13, 1998, alleging violations of her right to procedural due process as guaranteed by the United States Constitution, Ohio Rev.Code § 3319.16, and a collective bargaining agreement (doc. 1). Defendants Princeton City School District Board of Education and Assistant Superintendent David D. Baker, who acted to terminate Plaintiff's employment in 1997, assert in defense that they complied with the notice and hearing requirements found in the collective bargaining agreement and that no additional process was due Plaintiff under state or federal law prior to her termination (doc. 9). Plaintiff seeks an order requiring Defendants to reinstate her with full back pay, seniority and benefits as well as an award of the attorneys' fees and costs incurred in bringing this action.

In 1985, Defendant Princeton City School District Board of Education (hereinafter, the "School Board") hired Plaintiff as a special education teacher (doc. 1). While employed as a teacher in the Princeton City School District, Plaintiff was also a member of the Princeton Association of Classroom Teachers (hereinafter, "the Union"). Plaintiff attests that, from 1985 until the 1993–1994 school year, her record as a special education teacher remained "exemplary" (doc. 10, Ex. 1 (hereinafter, "McDaniel Aff.")). However, during the 1993–1994 school year, Plaintiff testified at a hearing before the Ohio State Board of Education (*Id.*). According to Plaintiff,

her testimony was not entirely favorable to the School Board (*Id.*). Plaintiff alleges that, following this testimony, her relationship with school administrators deteriorated to the point that administrators "subjected [Plaintiff] to unreasonable work rules" and "often unfairly singled [Plaintiff] out for criticism and discipline" (doc. 4; *see also* doc. 10, McDaniel Aff.).

On March 17, 1997, Plaintiff, who at this time held a continuing teaching contract, received written notice that the School Board was considering a disciplinary action against her (*Id.*). The notice further stated that, during a pre-disciplinary hearing to be held on or about March 19, 1997, she would have an opportunity to discuss allegations concerning (1) an attendance pattern; (2) failure to remain in the classroom; (3) excessive personal calls on work time; and (4) neglect of duty (doc. 10, McDaniel Aff., Attach. A). Plaintiff attended the hearing and discussed the above issues (doc. 10, McDaniel Aff.). According to Plaintiff, no one presented any evidence related to lack of lesson plans, lack of student behavior plans, or inappropriate discipline of students during the hearing (*Id.; see also* doc. 10, Ex. 2, McMurray Aff., & Ex. 3, Rudolph Aff.)

Thereafter, in a letter dated April 8, 1997, Defendant Baker notified Plaintiff that he planned to recommend that the School Board terminate her contract based on the following grounds: (1) lack of lesson plans; (2) lack of student behavior plans; (3) inappropriate discipline of students; (4) failure to remain in the classroom; and (5) neglect of duty (*Id.*, McDaniel Aff., Attach. B). The School Board then terminated Plaintiff's continuing teaching contract on April 15, 1997 (doc. 4).

In her Complaint, Plaintiff asserts that she was never given an opportunity to respond to three of the five grounds used in the decision to terminate her contract (doc. 1). Plaintiff argues that this violated the procedural due process rights guaranteed to her by the 1994–1997 collective bargaining agreement between the School

Board and the Union as well as by Ohio Rev.Code § 3319.16 and the U.S. Constitution. Ohio Rev.Code § 3319.16, for instance, requires that the pre-disciplinary notice contain a "full specification of the grounds" for the proposed discipline. The terms of the collective bargaining agreement provided that no union member could be disciplined or terminated "without good and just cause" (doc. 10, Ex. 3, Attach.A). The agreement also required that the School Board hold a pre-disciplinary hearing and provide notice to the union member of the "purpose" of the hearing (*Id.*). According to Union President Ellen Rudolph, this notice included notice of the specific charges against the union member (doc. 10, Ex. 3).

In addition, the collective bargaining agreement contained a grievance procedure that culminated in binding arbitration (doc. 10, Ex. 3, Attach.A). The collective bargaining agreement specifically limited Union members to this grievance procedure, stating that "[s]tatutory appeal rights set forth in Chapter 3319, ORC, shall not be applicable to bargaining unit members" (*Id.* at § 4.025). After her termination, Plaintiff filed a grievance pursuant to the collective bargaining agreement; this grievance was then arbitrated in 1998. On April 14, 1998, Arbitrator Harry Berns of the American Arbitration Association issued an award sustaining Plaintiff's grievance (doc. 10, Ex. 2, Attach.B).

The Arbitrator specifically concluded that the School Board lacked just cause to terminate Plaintiff's employment and that the School Board had acted improperly by terminating Plaintiff based on charges not addressed in her pre-disciplinary hearing (*Id.*).[1] Furthermore, the Arbitrator found that the School District administrators repeatedly and unfairly disciplined and ha-

rassed Plaintiff in retaliation for her testimony against the School District at the hearing before the Ohio State Board of Education during the 1993–1994 school year (*Id.*). In the end, the Arbitrator ordered that Plaintiff be reinstated with full back pay, seniority and benefits (*Id.*). Nevertheless, to this date, the School Board still refuses to comply with the Arbitrator's decision (doc. 10). The Union filed an Application to Enforce the Arbitrator's Award, which is currently pending in the Hamilton County, Ohio, Court of Common Pleas (*Id.*).

On September 1, 1999, Plaintiff and Defendants filed cross motions for summary judgment in the action pending before this Court (docs. 10 & 11). Plaintiff argues that she is entitled to judgment in her favor on the issue of whether Defendants violated her constitutional right to procedural due process by failing to give her adequate notice and the opportunity to be heard on the charges that led to her termination (doc. 10). In contrast, Defendants assert that judgment should be entered in their favor because Plaintiff cannot bring a claim pursuant to Ohio Rev.Code § 3319.16 and because Plaintiff received all the process to which she was due pursuant to the terms of the collective bargaining agreement and the U.S. Constitution (doc. 11). These motions are now ripe for the Court's determination.

## STANDARD OF REVIEW

The narrow question that we must decide on a motion for summary judgment is whether there exists a "genuine issue as to any material fact and [whether] the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The Supreme Court elaborated upon the appro-

---

1. The Arbitrator wrote in his Opinion and Award:

   While I agree with [the Union's] position that the Board expanded on their original charges, dredged up everything in the kitchen sink, and finally based their discharge on only one of the four original charges, plus other items not originally charged; I am

   not inclined to rest my decision on that alone. It is a technical defense, and adequate in the absence of others. I felt there is such a lack of just cause that the Board must be advised how serious were the failings of the administration in its treatment of [Plaintiff].

   (doc. 10, Ex. 2, Attach. B at 7).

priate standard in deciding a motion for summary judgment as follows:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case. *Id.* at 321, 106 S.Ct. 2548; *Guarino v. Brookfield Township Trustees,* 980 F.2d 399, 405 (6th Cir.1992); *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir.1989). If the moving party meets this burden, then the non-moving party "must set forth specific facts showing there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *see Guarino,* 980 F.2d at 405.

As the Supreme Court stated in *Celotex,* the non-moving party must "designate" specific facts showing there is a genuine issue for trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548; *Guarino,* 980 F.2d at 405. Although the burden might not require the non-moving party to "designate" facts by citing page numbers, " 'the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the non-moving party relies.' " *Guarino,* 980 F.2d at 405 (quoting *InterRoyal Corp. v. Sponseller,* 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied,* 494 U.S. 1091, 110 S.Ct. 1839, 108 L.Ed.2d 967 (1990)).

Summary judgment is not appropriate if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Conclusory allegations, however, are not sufficient to defeat a motion for summary judgment. *Mc-*

*Donald v. Union Camp Corp.,* 898 F.2d 1155, 1162 (6th Cir.1990).

## DISCUSSION

■ To prevail on a claim brought under Title 42 U.S.C. § 1983, a plaintiff must prove (1) that the challenged conduct was committed by a person acting under the color of state law, and (2) that the challenged conduct "caused" a deprivation of the plaintiff's rights or privileges secured by the laws or Constitution of the United States. *Baker v. McCollan,* 443 U.S. 137, 140, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979); *see also Gomez v. Toledo,* 446 U.S. 635, 640, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980). Here, Plaintiff alleges that Defendants acted under the color of state law to deprive her of the rights guaranteed by the Due Process Clause of the Fourteenth Amendment to the United States Constitution. The Due Process Clause provides procedural protections for property interests. Public employees whose property rights in continued employment are created by state laws or contracts may assert federal constitutional claims under the Due Process Clause of the Fourteenth Amendment. *See Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 537–38, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985); *Board of Regents v. Roth,* 408 U.S. 564, 576–78, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

In the cross motions for summary judgment pending before this Court, Defendants do not dispute that they acted under the color of state law in relation to Plaintiff's termination. Furthermore, Defendants concur that Plaintiff had a protected property interest in her continued employment with the Princeton City School District. However, Defendants contend that this property right arose solely out of Plaintiff's collective bargaining agreement and not Ohio Rev.Code § 3319.16. Moreover, Defendants argue that Plaintiff received all the process to which she was due pursuant to the collective bargaining agreement and the U.S. Constitution. In contrast, Plaintiff asserts that both Ohio

Rev.Code § 3319.16 and the collective bargaining agreement guaranteed Plaintiff certain property interests in the completion of her continuing teaching contract and she maintains that Defendants failed to provide her the process guaranteed to her by the statute, the collective bargaining agreement, and the U.S. Constitution.

In the following sections, the Court first addresses Defendants' arguments related to the issue of whether Ohio Rev.Code § 3319.19 applies in this case. The Court then examines whether Plaintiff received all of the process to which she was due prior to the termination of her employment by Defendants.

### I. The Application of Ohio Rev.Code § 3319.16 to Plaintiff's Case

Defendants insist that, pursuant to language in the collective bargaining agreement, Plaintiff is specifically exempted from any protections provided by Ohio Rev.Code § 3319.16. Defendants focus the Court's attention on § 4.025 of the 1994–1997 collective bargaining agreement, which states that "[s]tatutory appeal rights set forth in Chapter 3319, ORC, shall not be applicable to bargaining unit members" (*Id.* at § 4.025). According to Defendants, this clause means that Plaintiff cannot seek redress of any alleged violation of Ohio Rev.Code § 3319.

In addition, Defendants argue that the procedural due process protections provided in the collective bargaining agreement and Ohio Rev.Code § 3319.16 are in conflict. Specifically as to the pre-termination procedures, Defendants note that the collective bargaining agreement provides that a teacher is to receive advance notice of the "purpose" of a pre-disciplinary hearing while Ohio Rev.Code § 3319.16 requires that the pre-disciplinary notice contain a "full specification of the grounds" for the proposed discipline. Defendants contend that the state law requires more detailed notice about the grounds for discipline than the collective bargaining agreement.

Defendants further assert that, when a state law and a collective bargaining agreement conflict, Ohio Rev.Code § 4117.10(A) provides that the agreement prevails. *See State ex rel. Rollins v. Board of Educ. for Cleveland Heights–Univ. Heights City Sch. Dist.*, 40 Ohio St.3d 123, 124–25, 532 N.E.2d 1289, 1291–92 (1988). In support of their argument that Ohio Rev.Code § 3319.16 does not apply to Plaintiff's case, Defendants cite to *Holthaus v. Cincinnati Bd. of Educ.*, 76 Ohio App.3d 443, 446–47, 602 N.E.2d 360, 362 (1991), in which the state appellate court held that a school board did not violate statutory or constitutional due process rights in its decision to not renew a high school teacher's supplemental contract.

However, Plaintiff argues that *Holthaus* is inapposite to this matter. According to Plaintiff, the appellate court in *Holthaus* found that the plaintiff, who was challenging the school's decision not to renew his supplemental basketball and track coaching contract, was not entitled to any statutory or constitutional due process protections because he lacked a reasonable expectation of continued employment. *Id.* at 447, 602 N.E.2d at 362–63. Plaintiff distinguishes her case by pointing out that, in this case, no one contests the fact that her Union's collective bargaining agreement alone provides Plaintiff with a reasonable expectation of continued employment.

Plaintiff also argues that the procedural requirements of Ohio Rev.Code § 3319.16 complement rather than conflict with the requirements of the collective bargaining agreement. Plaintiff asserts that "[p]re-disciplinary notice and a pre-disciplinary hearing are absolutely meaningless for purposes of procedural due process if the individual is not given notice and an opportunity to respond to the actual charges for which his or her employer is considering discipline" (doc. 13). Plaintiff implies that the "purpose" requirement of the collective bargaining agreement should be read in conjunction with the "full specification" clause of Ohio Rev.Code § 3319.16 in order

to be fully understood. Plaintiff asks the Court to consider the affidavit of Union President Ellen Rudolph. Ms. Rudolph attests that the collective bargaining agreement requires that union members be informed of the specific charges against them (doc. 10, Ex. 3, Rudolph Aff. at ¶ 8). In addition, Plaintiff argues that Defendant Baker himself indicated in his deposition that pre-disciplinary notice is meant to give union members notice of the charges for which discipline may be imposed[2] (Baker Dep. at 11–12).

Furthermore, Plaintiff contends that § 4.025 of the collective bargaining agreement merely provided that union members waived their right to use the appeal process contained in Ohio Rev.Code § 3319.16 in favor of the grievance and arbitration procedures contained in the collective bargaining agreement. She asserts that the requirement in § 3319.16 that a teacher be provided "full specification" of the grounds for the consideration of discipline is not part of the statute's appeal process.

After reviewing this matter, the Court is not persuaded that the pre-disciplinary procedures found in Ohio Rev.Code § 3319.16 conflicted rather than complemented the procedures provided by the 1994–1997 collective bargaining agreement. Nonetheless, even if the terms conflicted, and the collective bargaining agreement prevailed as Defendants argue, then this Court finds that the agreement required Defendants to do more than just inform Plaintiff that the pre-disciplinary hearing could lead to the imposition of discipline. While the "full specification" mandate of Ohio Rev.Code § 3319.16 may not have been required, certainly some specific notice of the reasons for the possible discipline was necessary in order to fulfill the requirements of the U.S. Constitution. See Loudermill, 470 U.S. at 547–48, 105 S.Ct. 1487. Moreover, both Defen-

dant Baker and Ms. Rudolph indicated that some degree of specificity was required in the pre-disciplinary notice. Whether Defendants provided the adequate amount of notice is discussed in the following section.

## II. Plaintiff's Procedural Due Process Rights

■ In order to protect constitutionally-guaranteed property interests, the Supreme Court requires a school board employer to provide a tenured teacher "a pretermination opportunity to respond, coupled with post-termination administrative procedures." Loudermill, 470 U.S. at 547–48, 105 S.Ct. 1487. These procedures conform to the essential requirement of due process—namely, that any deprivation of property be preceded by both notice and an opportunity to be heard. Id. at 542, 105 S.Ct. 1487; see also Roth, 408 U.S. at 569–70, 92 S.Ct. 2701; Perry v. Sindermann, 408 U.S. 593, 599, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); Boddie v. Connecticut, 401 U.S. 371, 379, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971); Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 313, 70 S.Ct. 652, 94 L.Ed. 865 (1950).

In Loudermill, the Supreme Court addressed the issue of whether two boards of education deprived their employees of their constitutional due process rights by not affording them the opportunity to respond to the charges leading up to their terminations. The Supreme Court held that, before termination, a "tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." Id. at 546, 105 S.Ct. 1487. According to the Supreme Court, this allowed the pre-termination hearing to "be an ini-

---

**2.** During the deposition of Defendant Baker, Plaintiff's attorney asked, "Are you saying that generally the predisciplinary notice ... is meant to give the teacher notice of what there potentially could be discipline for?" Defendant Baker answered, "Correct." He further

explained that he understood that the predisciplinary hearing functioned to protect a teacher's Loudermill rights by allowing "an employee ... to respond to any accusations or charges or allegations toward them" (Baker Dep. at 11–12).

tial check against mistaken decisions—essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." *Id.* at 545–46, 105 S.Ct. 1487.

▪ Moreover, after the Supreme Court issued its *Loudermill* decision, the Sixth Circuit found that:

> The critical element of the *Loudermill* requirements is the opportunity for the employee to respond to the employer's evidence. The chance to be heard, to present one's side of the story, is a fundamental requirement of any fair procedural system. The opportunity to respond must be a meaningful opportunity to prevent the deprivation from occurring.

*Buckner v. City of Highland Park*, 901 F.2d 491, 495 (6th Cir.1990) (citation omitted) (finding that a police officer received oral and written notice of the charges against him prior to his discharge and holding that the officer was given a meaningful opportunity to respond to the charges). The pre-termination hearing, however, need not fully examine the evidence supporting the employee's termination. *Lee v. Western Reserve Psychiatric Habilitation Center*, 747 F.2d 1062, 1067 (6th Cir.1984) (citing *Arnett v. Kennedy*, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974)); *see also Hadad v. Croucher*, 970 F.Supp. 1227, 1251 (N.D.Ohio 1997). Instead, due process only requires that "such descriptive explanation be afforded as to permit the employee to identify the conduct giving rise to the dismissal thereby enabling him to make a response." *Helms v. Rafter*, 853 F.Supp. 897, 903 (W.D.N.C.1994) (citing *Linton v. Frederick County Bd. of County Comm'rs*, 964 F.2d 1436, 1440 (4th Cir. 1992); *Gniotek v. City of Philadelphia*, 808 F.2d 241, 244 (3d Cir.1986)).

▪ In this case, Defendants contend that they provided Plaintiff all the procedure required by the collective bargaining agreement and the U.S. Constitution when they gave Plaintiff notice of the intended discipline as well as an opportunity to respond to the charges levied against her during a pre-disciplinary hearing and a post-disciplinary grievance process. Defendants assert that they terminated Plaintiff because she neglected her duties, an issue they maintain she discussed during the pre-disciplinary hearing. The pre-disciplinary hearing, Defendants note, did not have to be a full evidentiary hearing. *See Lee*, 747 F.2d at 1067. Thus, Defendants argue, they are entitled to summary judgment because Plaintiff was not deprived of any procedural due process rights.

However, Plaintiff states that she was not informed of, nor able to respond to, three of the five charges against her prior to her termination. Therefore, Plaintiff argues, Defendants violated her procedural due process rights by terminating her employment without providing her a pre-termination opportunity to respond to new and additional grounds for her termination. In support of her argument, Plaintiff points to the differences existing between (1) the notice of her pre-disciplinary hearing and (2) Defendant Baker's letter terminating her employment.

Initially, a written notice informed Plaintiff that a pre-disciplinary hearing had been scheduled (doc. 10, Ex. 1, Attach.A). The notice further explained to Plaintiff that:

> The purpose of a pre-disciplinary hearing is to give you the opportunity to present your explanation regarding the following:
>
> -*attendance pattern*
>
> -*failure to remain in classroom*
>
> -*excessive personal calls on work time*
>
> -*neglect of duty*

*Id.* (emphasis added). Plaintiff attended the hearing on March 19, 1997 and discussed the above issues. According to Plaintiff, during the hearing, no one presented any evidence or asked her to comment about her alleged lack of lesson plans, lack of student behavior plans or

inappropriate discipline of students (doc. 10, Ex. 1, McDaniel Aff. at ¶ 19).

Then, in a letter dated April 8, 1997, Defendant Baker notified Plaintiff that he planned to recommend her termination (doc. 10, Ex. 1, Attach.B). The letter addressed to Plaintiff reads, in pertinent part:

> As a result of the pre-disciplinary hearing, held March 19, 1997, the following conclusions can be made. You have a pattern of being out of your assigned duty area going back to 1994. In fact you are frequently seen away from your classroom when your students are in session. You have been repeatedly warned, reprimanded, directed and suspended for *lack of lesson plans, lack of student behavior plans, inappropriate discipline of students,* and failure to remain in your classroom.
>
> This is unacceptable behavior for a teacher. If a teacher expects to maintain a teaching position and be paid for that position, the very least she must do is be in the classroom assigned to her and stay there while the students are there. It is also not unreasonable to expect that a teacher will have a *behavior plan* for her students and a *lesson plan* on what she is going to teach for the day.
>
> As a result of this pattern of neglect of duty, I will recommend, to the board of education, at their April 15, 1997 regularly scheduled meeting, that your teaching contract be terminated at the end of the day, April 15, 1997.

*Id.* (emphasis added).

Plaintiff argues that, in contradiction to the mandate of *Loudermill,* Defendants failed to give her the opportunity to present her side of the story regarding her alleged lack of lesson plans, lack of behavior plans and inappropriate discipline of students. *See Id.,* 470 U.S. at 546, 105 S.Ct. 1487; *Buckner,* 901 F.2d at 495. In contrast, Defendants maintain that Defendant Baker's letter only recited Plaintiff's disciplinary history. Defendants allege that they warned Plaintiff in the past

about her lack of lesson and behavior plans and that they suspended Plaintiff in 1996 for inappropriately disciplining a student (*see* doc. 11, Ex. A, McDaniel Dep. at 131–139). Moreover, Defendants assert that they terminated Plaintiff's employment because of her neglect of duty, an issue they argue she did discuss at the pre-disciplinary hearing.

Plaintiff responds that the letter clearly indicates that Defendants' decision to terminate Plaintiff related to their belief that she lacked lesson plans and behavior plans and that she inappropriately disciplined students. According to Plaintiff, these perceived shortcomings became, in essence, sub-categories of Defendants' finding that Plaintiff neglected her duties. In addition, Plaintiff asserts that Defendant Baker's letter could not be a simple recitation of Plaintiff's disciplinary history because Defendants had not formally disciplined her in the past for a lack of lesson or behavior plans. In sum, Plaintiff alleges that she did not have notice of or an opportunity to respond to these issues in 1997, and she argues that the failure of Defendants to provide her a chance to satisfactorily respond to these issues runs contrary to the sense of fairness captured in the Fifth and Fourteenth Amendments to the U.S. Constitution and described in *Loudermill.*

After reviewing this matter, the Court finds that Plaintiff did not have notice of, or the opportunity to respond to, three of the five reasons noted for her termination in Defendant Baker's April 8, 1997 letter. Accordingly, because Defendants violated her constitutional rights by terminating Plaintiff without first providing her proper pre-termination notice and the opportunity to be heard, the Court concludes that summary judgment must be entered in favor of Plaintiff. However, as for Plaintiff's request that Defendant Baker be judged individually liable, the Court notes that Plaintiff's Complaint asserts claims against Defendant Baker in his professional capacity only. Therefore, we

agree with Defendants that Plaintiff cannot bring a personal claim against Defendant Baker for the first time in a motion for summary judgment.

Furthermore, the Court recognizes that Plaintiff obtained a post-termination hearing by participating in the grievance process established in the collective bargaining agreement. However, after the Arbitrator ordered her reinstatement and an award of back pay, the School Board refused to comply. The Hamilton County Court of Common Pleas must now decide whether to enforce or vacate the Arbitrator's decision. Regardless of the state court's decision, though, the Parties must address our holding that Defendants failed to adequately protect Plaintiff's pre-termination due process rights.

## CONCLUSION

For the foregoing reasons, we hereby GRANT IN PART Plaintiff's Motion for Summary Judgment and ORDER that summary judgment be entered in favor of Plaintiff against Defendant Princeton City School District Board of Education and against Defendant David Baker in his professional capacity. In addition, the Court hereby DENIES Defendants' Motion for Summary Judgment. Furthermore, Plaintiff is hereby ORDERED to file within twenty-one (21) days of the date of this Order a motion detailing and supporting the relief, including back pay and attorneys' fees, due Plaintiff as a result of our holding in this action. Defendants may respond within twenty-one (21) days, and Plaintiff may reply within seven (7) days thereafter. A hearing on damages is hereby SCHEDULED for February 2, 2000, at 10:00 A.M.

SO ORDERED.